UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ADAM REED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 1:25-cv-00518-JMS-MKK |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255**

For the reasons explained in this Order, Petitioner Adam Reed's Motion for Relief Pursuant to 28 U.S.C. § 2255, [Filing No. 1], must be **DENIED** and the action **DISMISSED WITH PREJUDICE**. In addition, the Court finds that a certificate of appealability should not issue. Further, for the reasons discussed below, Mr. Reed's Motion to Compel Discovery and Production Pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [Filing No. 22], is **DENIED**, and his Motion to Expand the Record Pursuant to Rule 7 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [Filing No. 23], is **GRANTED IN PART** and **DENIED IN PART**.

**I.**
**FACTS AND PROCEDURAL BACKGROUND**

**A.      Criminal Proceedings**

On October 21, 2021, Mr. Reed was charged by Indictment with ten counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; nine counts of Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and one count of Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). [Filing No. 5 in *United States v. Adam Reed*,

1:21-cr-00317-JMS-MJD-1 (the "Criminal Case").]   The Presentence Investigation Report ("PSR") describes the offense conduct, which included robberies of ten businesses while brandishing a firearm in August and September 2020.  [Filing No. 100 in the Criminal Case at 6-9.]  During one of the robberies, Mr. Reed discharged his firearm four times.  [Filing No. 100 in the Criminal Case at 8.]

On October 16, 2023, Mr. Reed, represented by Dominic Martin, filed a Petition to Enter Plea of Guilty and Plea Agreement.  [Filing No. 87 in the Criminal Case.]  In the Plea Agreement, signed by Mr. Reed, he:

- Acknowledged that he had told his attorney the facts and surrounding circumstances relating to the matters in the Indictment;

- Acknowledged that he had read the entire Plea Agreement and discussed it with his attorney;

- Acknowledged that he understood all the terms of the Plea Agreement and that those terms correctly reflected the results of plea negotiations;

- Acknowledged that he was "fully satisfied with [his] attorney's representation during all phases of [the] case," and that his attorney had "done all that anyone could do to counsel and assist [him]"; and

- Acknowledged that he was "freely and voluntarily pleading guilty."

[Filing No. 87 in the Criminal Case at 19-20.]  In the Plea Agreement, Mr. Martin certified that he had explained all of the accusations against Mr. Reed to him, believed each statement in the Petition to Enter Plea of Guilty and Plea Agreement was accurate and true, and believed that Mr. Reed's guilty plea "accord[ed] with [his] understanding of the facts as related to [him] by [Mr. Reed] and [was] consistent with [his] advice to [Mr. Reed]."  [Filing No. 87 in the Criminal Case at 22.]

The Court held a change of plea hearing on October 16, 2023.  [Filing No. 89 in the Criminal Case.]  During the hearing, the following colloquy occurred after Mr. Reed was sworn:

2

THE COURT:  Do you understand that you are now under oath, and if you answer any of my questions falsely your answers may later be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT:  Yes, ma'am.

\*            \*            \*

THE COURT:  Can you read and write English well enough to have understood the charges that were filed against you in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And what about the plea agreement that you signed, were you able to understand that document?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And you have a copy of it there in front of you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Sir, have you ever been treated for mental health issues?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Tell me what.  What kind of treatment for what issues?

THE DEFENDANT:  Like anger management and depression.

THE COURT: Okay.  Have you been treated since you have been detained on these charges?

THE DEFENDANT:  Oh, no, ma'am.

THE COURT:  Are you suffering the effects of depression today in any way that would interfere with your ability to understand what's happening?

THE DEFENDANT:  No, ma'am.

THE COURT: Okay.  And what about substance abuse, have you ever been treated or need treatment for substance abuse?

THE DEFENDANT:  No, ma'am.

THE COURT:  Right now are you under the influence of any drug, medication, or other substance of any kind that might interfere with your ability to understand what's happening?

THE DEFENDANT:  No, ma'am.

*          *          *

THE COURT:  When the case first began, did you receive a copy of the indictment that was filed against you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  And have you fully discussed the charges that were filed against you and the case in general with Mr. Martin, your attorney?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Are you fully satisfied with the counsel, representation, and advice Mr. Martin has given you in this case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Mr. Martin, were all formal plea offers by the Government conveyed to Mr. Reed?

MR. MARTIN:  Yes, Your Honor.

THE COURT:  And, Mr. Hilton, did Mr. Reed receive the benefit of the most lenient offer the Government intended to make in this case?

MR. HILTON:  He did, Your Honor.

*          *          *

THE COURT:  Has anyone made any promises or assurances that are not in the written plea agreement to persuade you to either plead guilty or sign the agreement?

THE DEFENDANT:  No, ma'am.

THE COURT:  Has anybody threatened you or forced you in any way to plead guilty or sign the agreement?

THE DEFENDANT:  No, ma'am.

THE COURT:  Do you believe you understand the terms of the plea agreement?

4

THE DEFENDANT:  Yes, ma'am.

THE COURT:  We'll go over it in just a second.  Are you pleading guilty today of your own free will and because you are guilty?

THE DEFENDANT:  Yes, ma'am.

[Filing No. 120 in the Criminal Case at 3-6.]

The Court then went over the provisions and effects of the Plea Agreement with Mr. Reed and also discussed what would happen at his sentencing hearing, and Mr. Reed acknowledged that he understood the Court's explanations.  [Filing No. 120 in the Criminal Case at 7-27.]  Mr. Reed pled guilty to ten counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) and 2, and four counts of Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  [Filing No. 120 in the Criminal Case at 28.]  The Court stated:

> It is the finding of the Court in the case of United States vs. Adam Reed that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses.  The plea is therefore accepted, and the defendant is now adjudged guilty of [counts 1 through 9, 11, 13, 15, 17, and 19].

[Filing No. 120 in the Criminal Case at 28.]

On March 12, 2024, the Court held Mr. Reed's sentencing hearing.  [Filing No. 113 in the Criminal Case.]  Mr. Martin confirmed that he had reviewed the PSR with Mr. Reed and that Mr. Reed did not have any objections to the PSR's contents.  [Filing No. 122 in the Criminal Case at 4.]  The Court went through Mr. Reed's Guideline calculation and explained that his total offense level was 29, with a Criminal History Category of III and a Guideline range of 108 to 135 months.  [Filing No. 122 in the Criminal Case at 9-11.]  It noted that counts 2, 4, 6, and 8 – all charges for

Brandishing a Firearm in Furtherance of a Crime of Violence – each carried a statutory mandatory minimum of 84 months per count, consecutive to all counts and to each other, resulting in a Guideline range of 336 months. [Filing No. 122 in the Criminal Case at 10.] Mr. Martin agreed with the Court's Guideline calculation. [Filing No. 122 in the Criminal Case at 11.] The Court considered the factors set forth in 18 U.S.C. § 3553(a) and discussed the trauma that Mr. Reed encountered as a child, noting that it was "tragic and horrifying," and included "constant domestic violence and fear, [and] dreadful instability that prevented [him] from flourishing as [he] could have," and recognized that he had significant burdens placed on him. [Filing No. 122 in the Criminal Case at 28-29.] The Court noted that the Government "showed [Mr. Reed] some grace in not requiring [him] to plead to the count charging [him] with the discharge of the weapon," which "was a gift, really, on their part because it would have been proved, so they took into account some of the mitigation…." [Filing No. 122 in the Criminal Case at 32.] The Court ultimately sentenced Mr. Reed to 348 months' imprisonment, followed by 3 years of supervised release. [Filing No. 114 in the Criminal Case at 3-4.]

### B.    2255 Proceedings

On March 17, 2025, Mr. Reed filed a Motion to Vacate in the Criminal Case, [Filing No. 118 in the Criminal Case], the Court opened this case to consider the Motion, the Government has responded, [Filing No. 17], and Mr. Reed has filed a reply, [*see* Filing No. 24; Filing No. 25]. Mr. Reed has also filed a Motion to Compel Discovery and Production Pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [Filing No. 22], and a Motion to Expand the Record Pursuant to Rule 7 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [Filing No. 23], to which the Government has responded, [Filing No. 26]. All of Mr. Reed's motions are ripe for the Court's review.

## II.
### MISCELLANEOUS MOTIONS

#### A.    Motion to Compel Discovery

Mr. Reed argues in his Motion to Compel Discovery that "additional evidence exists particularly from a mitigation specialist, Ms. Jennifer Allison, that is directly relevant to: (1) His mental health condition; (2) His competency at the time of plea; and (3) Counsel's ineffective assistance."  [Filing No. 22 at 1.]  He asserts that during a video visit, Ms. Allison observed his mental health condition, including his Attention Deficit/Hyperactivity Disorder ("ADHD"), his "cognitive limitations and executive functioning," and "[b]ackground information relevant to trauma and developmental impairment."  [Filing No. 22 at 2-3.]  Mr. Reed contends that he cannot obtain evidence from Ms. Allison because the evidence is "controlled by third parties" and "[i]nstitutional barriers have prevented voluntary disclosure."  [Filing No. 22 at 3.]  He argues that his request is narrowly tailored, and includes: "Authorization to obtain an affidavit and/or declaration from [Ms. Allison] regarding: (1) [his] mental health condition; (2) Observations relevant to competency; & (3) Background and mitigation factors."  [Filing No. 22 at 3.]  In the alternative, Mr. Reed requests permission to serve a subpoena or conduct limited written discovery.  [Filing No. 22 at 3.]  He argues that without evidence from Ms. Allison, he cannot "fully develop his claims," the Court "is left with an 'incomplete' record," and "[t]he Government benefits from the absence of evidence it helped prevent from being developed."  [Filing No. 22 at 4.]

The Government responds that Mr. Reed must show that the underlying facts, if proven, constitute a constitutional violation and that there is good cause for discovery.  [Filing No. 26 at 2.]  It argues that Mr. Reed cannot show that good cause exists and contends that Mr. Reed filed a mitigation report from Alison Hundt Russell, it does not know whether Mr. Reed's reference to Ms. Allison is to the same person, and discovery is unnecessary because mitigation information is

already in the record.  [Filing No. 26 at 3-4.]  The Government also argues that Mr. Reed has not shown a reasonable likelihood of success on the merits.  [Filing No. 26 at 4.]

Mr. Reed did not file a reply.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts states: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." http://www.uscourts.gov/file/27085/download.  Merely pursuing collateral relief is insufficient to entitle Mr. Reed to discovery – he must also "make a colorable claim of a constitutional violation and show good cause."  *United States v. Brown*, 2023 WL 3391473, at *1 (7th Cir. May 11, 2023) (citation omitted).

Mr. Reed has not shown that there is good cause for discovery related to an investigation undertaken by Ms. Allison.  First, it is not clear who Ms. Allison is and it is possible that Mr. Reed is confusing Ms. Allison with the individual who performed his mitigation interview, Alison Hundt Russell.  Ms. Russell's 27-page sentencing memorandum, which was based on meetings with Mr. Reed and his various relatives and acquaintances, was filed before sentencing, reviewed by the Court, and considered by the Court in determining Mr. Reed's sentence.  [Filing No. 108-1 in the Criminal Case; Filing No. 122 in the Criminal Case at 2-3 (Court stating at Mr. Reed's sentencing hearing that it had reviewed the sentencing memoranda submitted by the Government and Mr. Reed).]  The sentencing memorandum appears to have included information gleaned from interviews with Mr. Reed and others for purposes of drafting that document – including Ms. Allison, to the extent that Mr. Reed is not confusing her with Ms. Russell.  And the sentencing

memorandum was comprehensive, stating that it was based on meetings with Mr. Reed and nine other individuals, and on a review of his mental health, medical, educational, and legal records. [Filing No. 108-1 in the Criminal Case at 1-2.]  Mr. Reed has not shown that there is further evidence related to the arguments that he sets forth in his § 2255 motion.  Additionally, and as discussed below, the Court questioned Mr. Reed regarding his mental state at the change of plea hearing and considered his traumatic background, and he stated under oath that he understood the proceedings.

Because Mr. Reed has not shown good cause for discovery related to information from a mitigation specialist named Jennifer Allison, his Motion to Compel Discovery, [Filing No. 22], is **DENIED**.

### B.      Motion to Expand the Record

In support of his Motion to Expand the Record, Mr. Reed argues that "the existing record is incomplete and insufficient to resolve [his] claims" because the plea colloquy "does not address: (1) The extent of counsel's pressure on [him] prior to the hearing; (2) The breakdown in the attorney-client relationship; (3) The full scope of [his] mental health impairments; and (4) [his] ability to meaningfully understand and participate in the proceedings."  [Filing No. 23 at 2.]  Mr. Reed seeks to expand the record to include: (1) his Declaration; (2) mental health and/or BOP records reflecting his ADHD, cognitive impairments, and treatment, symptoms, or functional limitations; (3) correspondence and/or notes reflecting the conflict he had with Mr. Martin, including requests for new counsel; and (4) any other documents that "[c]orroborate [his] mental health condition," "[d]emonstrate difficulty understanding proceedings," and "[s]upport claims of coercion and/or impaired decision-making."  [Filing No. 23 at 3.]  Mr. Reed submits his

Declaration, in which he outlines issues with his relationship with Mr. Martin and with his mental health.  [Filing No. 23-1.]

In its response, the Government argues that Mr. Reed is permitted to file materials that he possesses, but "to the extent [he] is requesting the Court grant discovery for him to obtain such materials, he has not shown good cause."  [Filing No. 26 at 4-5.]

Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

(a) **In General.**  If the [petition] is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the [petition]. The judge may require that these materials be authenticated.

(b) **Types of Materials.**  The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

http://www.uscourts.gov/file/27805/download (last visited July 20, 2026).

Mr. Reed's Motion to Expand the Record, [Filing No. 23], is **GRANTED IN PART** to the extent that Mr. Reed's Declaration at Filing No. 23-1 is part of the record and the Court will consider the Declaration in ruling on his § 2255 motion.  The Motion to Expand the Record, [Filing No. 23], is **DENIED IN PART** to the extent that the Court declines to order that the other types of documents Mr. Reed references in his motion – BOP and other records related to his ADHD or his mental health and documents related to his conflict with Mr. Martin – be produced and made part of the record.  As discussed above and below, the Court considered Mr. Reed's mental state at sentencing and he has not produced any evidence that he has ADHD.  Further, Mr. Reed's Declaration and his previous request for new counsel in the Criminal Case adequately inform the Court regarding any conflict that he had with Mr. Martin, and Mr. Reed has not shown that any additional documents relevant to that issue exist in any event.

10

## III.
## § 2255 MOTION

### A.    Standard of Review

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

A § 2255 movant claiming ineffective assistance of counsel bears the burden of showing that: (1) counsel's performance fell below objective standards for reasonably effective representation; and (2) this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Stickland* requirements, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first requirement of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice requirement, a petitioner "must show that 'but for

11

counsel's errors, there is a reasonable probability that the result would have been different.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016)). "In the context of a guilty plea, a petitioner demonstrates prejudice by 'showing that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone*, 889 F.3d at 908 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### B.      Discussion

In support of his § 2255 motion, Mr. Reed argues that Mr. Martin was ineffective for four reasons: (1) Mr. Martin intercepted Mr. Reed's letter requesting new counsel and "tricked" Mr. Reed into agreeing to keep Mr. Martin as counsel; (2) Mr. Martin coerced Mr. Reed into pleading guilty; (3) Mr. Martin failed to request a competency hearing based on Mr. Reed's ADHD; and (4) Mr. Martin failed to request ballistic testing on Mr. Reed's firearm. [Filing No. 1; Filing No. 2.] The Court considers whether Mr. Reed has met the *Strickland* requirements in connection with each of his arguments.

### 1.      Requests for New Counsel

In support of his motion, Mr. Reed argues that he requested new counsel on January 5, 2023, the Court set a hearing for January 19, 2023, but Mr. Martin "tricked [him by] promising he would do better." [Filing No. 2 at 2.] He asserts that he then wrote a letter to the Court in November 2023 "expressing his dislike of Mr. Martin's representation," but Mr. Martin "intercepted it, refused to bring the issue before the Court, [and] conceal[ed it] from the Court and deceiv[ed] the Court." [Filing No. 2 at 2.]

In its response, the Government argues that while it is not privy to Mr. Reed's communications with Mr. Martin, "it is 'palpably incredible' that an experienced defense attorney

12

would withhold information from the Court" by intercepting Mr. Reed's letter. [Filing No. 17 at 11.]

Mr. Reed argues in his reply that the Government does not meaningfully address his arguments regarding his requests for new counsel and that "[a] breakdown in that relationship undermines the entire defense process and the 'voluntariness' of any plea." [Filing No. 24 at 3.] He asserts that an evidentiary hearing is required regarding whether Mr. Martin interfered with his request for new counsel. [Filing No. 24 at 4.] In his Declaration, Mr. Reed states that he requested new counsel on January 5, 2023; he and Mr. Martin were not communicating effectively, he did not trust Mr. Martin's advice or representation, and he did not believe Mr. Martin was acting in his best interests; he told Mr. Martin he was not comfortable proceeding with him; and Mr. Martin discouraged him from pursuing new counsel and said "I can fix this" or "I will do better," which caused Mr. Reed to hesitate in continuing with his request for new counsel. [Filing No. 24-1 at 2-3.][1]

First, as to Mr. Reed's claim that Mr. Martin convinced him to withdraw his January 2023 request for new counsel, the docket reflects that Mr. Reed sent a letter to the Court on January 5, 2023 requesting new counsel, the Court docketed the letter as a motion and set a hearing, and Mr. Reed then withdrew the motion at the hearing. [Filing Nos. 49, 50, 51, and 52 in the Criminal Case.] It would not be unusual for Mr. Martin to discuss his representation of Mr. Reed with Mr. Reed, and Mr. Reed has not presented any evidence indicating that he did not voluntarily withdraw his motion for new counsel. Mr. Reed's claim that Mr. Martin convinced him to withdraw his request for new counsel does not provide a basis for relief.

---

[1] Mr. Reed raises the same arguments he discussed in his reply in a document filed at Filing No. 25 (which he titles as a "Memorandum"), and files his Declaration again at Filing No. 25-1.

Second, as to Mr. Reed's argument that Mr. Martin intercepted a letter to the Court in November 2023 requesting new counsel and that he would not have pled guilty if that request had been considered and granted, the timeline does not support Mr. Reed's argument. Mr. Reed filed his Petition to Enter Plea of Guilty, the Court held the plea hearing, and Mr. Reed pled guilty on October 16, 2023. [Filing Nos. 87 and 89 in the Criminal Case.] Accordingly, any request for new counsel that Mr. Reed claims was "intercepted" by Mr. Martin in November 2023 had no bearing on whether or not Mr. Reed pled guilty, as he claims. He had already done so. Indeed, Mr. Reed stated at his plea hearing that he was "fully satisfied with the counsel, representation, and advice Mr. Martin [had] given [him] in this case." [Filing No. 120 in the Criminal Case at 5.] His statements to the Court are given a "strong presumption of verity." *United States v. Silva*, 122 F.3d 412, 415 (7th Cir. 1997) (quotation and citation omitted). Mr. Reed's argument that Mr. Martin intercepted a letter seeking new counsel in November 2023 does not provide a basis for relief as to the effectiveness of his guilty plea the month before.

Mr. Reed has not shown that Mr. Martin provided ineffective assistance of counsel by talking him into not seeking new counsel in January 2023 or allegedly intercepting his request for new counsel in November 2023.

### 2.    *Coercing Mr. Reed to Plead Guilty*

Mr. Reed argues that he was prejudiced because Mr. Martin coerced him into pleading guilty, and "[h]ad the matter again been brought before the Court [he] would have went to trial with another attorney." [Filing No. 2 at 2.]

The Government responds that Mr. Reed has not presented any evidence that Mr. Martin coerced him into pleading guilty and that he has not shown that he suffered any prejudice. [Filing No. 17 at 11-12.] Specifically, it notes that Mr. Reed "consistently affirmed his desire to plead

14

guilty" at the plea hearing and at sentencing he apologized for his crimes, which is "not indicative of someone who wanted to assert his innocence at trial." [Filing No. 17 at 12.]  The Government also contends that Mr. Reed benefitted from the guilty plea because if he had gone to trial, he would have faced the six § 924(c) counts that the Government dismissed pursuant to the Plea Agreement, which "would have increased his mandatory sentence by 45 years," and he would have "lost the three-point acceptance of responsibility." [Filing No. 17 at 12.]

In his reply, Mr. Reed points to his Declaration in which he states that he felt pressured by Mr. Martin into pleading guilty because he did not trust Mr. Martin, he felt unprepared for trial, he did not believe Mr. Martin was willing to properly defend him, and he was influenced by his mental state and his lack of understanding of his legal options. [Filing No. 24-1 at 3.]  He states that if he had been represented by other counsel, he would have rejected the plea and gone to trial. [Filing No. 24-1 at 3.]

Courts must "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017).  Instead, they "look to contemporaneous evidence to substantiate a defendant's expressed preferences" and only allow a withdrawal if they are convinced that the defendant would have pleaded differently. *Id.*  Mr. Reed simply stating several years after his plea that Mr. Martin coerced him to plead guilty is not sufficient to overturn his guilty plea, which was supported by his repeated acknowledgements that he understood the Plea Agreement, and his testimony that no one threatened him to plead guilty and that he was satisfied with Mr. Martin's representation. Specifically, the Court went over each provision of the Plea Agreement at the plea hearing and Mr. Reed acknowledged that he understood each provision.  He also stated that he believed he was adequately advised about the plea and sentencing possibilities and understood the Plea Agreement

in total.  Additionally, he stated that he was satisfied with Mr. Reed's representation during all phases of the case.  And most significantly, Mr. Reed stated that nobody had "made any promises or assurances that are not in the written plea agreement to persuade [him] to either plead guilty or sign the [plea] agreement," and that nobody had "threatened [him] or forced [him] in any way to plead guilty or sign the [plea] agreement."  [Filing No. 120 in the Criminal Case at 6.]  Again, Mr. Reed's statements to the Court during the plea hearing are given a "strong presumption of verity." *Silva*, 122 F.3d at 415 (quotation and citation omitted); *see also United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard….[W]hen the judge credits the defendant's statements in open court, the game is over."). Even if Mr. Martin encouraged Mr. Reed to plead guilty, Mr. Reed acknowledged his understanding of each provision of the Plea Agreement when the Court reviewed those provisions with him and stated that no one had threatened him or forced him to plead guilty.  He has not presented a compelling reason why the statements he made to the Court are now false.

Mr. Reed's argument that Mr. Martin coerced him to plead guilty does not provide a basis for relief.

### 3.    *Failure to Request a Competency Hearing*

Mr. Reed argues that ADHD "is a severe mental impairment, that affect[s] the brain," and that "there was a bona fide doubt about [his] ability to consult with counsel and understand the nature of his crimes."  [Filing No. 2 at 2-3.]  He contends that he was "entitled to a competency hearing prior to accepting the plea deal."  [Filing No. 2 at 3.]

The Government argues in its response that there is no evidence that Mr. Reed had ADHD and that Mr. Reed told the Court during the plea colloquy that he had discussed the charges with

Mr. Martin, understood the terms of the Plea Agreement, and was pleading guilty of his own free will.  [Filing No. 17 at 13-14.]  It also notes that Mr. Martin "effectively communicated to the Court the extent of [Mr.] Reed's tragic upbringing," and "that advocacy impacted the Court" as Mr. Reed got a below-guidelines sentence.  [Filing No. 17 at 14.]  The Government asserts that Mr. Reed cannot show prejudice because a prior evaluation did not find that he had ADHD, he "has not shown that another evaluation would have diagnosed him with ADHD, much less that such a diagnosis would have resulted in incompetence," and the Court found him competent at the time of his plea.  [Filing No. 17 at 15.]

Mr. Reed argues in his reply that "[t]he correct standard is…whether there was reasonable cause to question 'competency', and not whether 'incompetence' was proven."  [Filing No. 24 at 3.] He asserts that "mental impairment does not need to be 'formally' diagnosed to trigger the duty," and that he has alleged that he has cognitive and attention impairments, difficulty understanding the proceedings, and an inability to effectively assist counsel.  [Filing No. 24 at 3.]

"A criminal defendant may not be tried unless he is competent, and he may not…plead guilty unless he does so 'competently and intelligently.'"  *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citation omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).  "The test for whether a defendant is competent to stand trial focuses on 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.'"  *United States v. Woodard*, 744 F.3d 488, 493 (7th Cir. 2014) (emphasis omitted) (quoting *United States v. Ross*, 510 F.3d 702, 712 (7th Cir. 2004)).  This standard also applies to guilty pleas.  *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005) ("[T]he standard governing competency to plead guilty is the same as that used to evaluate competency to stand trial.").

To safeguard this constitutional guarantee, a court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Where a petitioner contends that he received ineffective assistance because his attorney failed to request a competency hearing, the prejudice inquiry asks "whether there is a reasonable probability that the defendant would have been found unfit had a hearing been held." *Warren v. Baenen*, 712 F.3d 1090, 1100 (7th Cir. 2013) (citing *Burt*, 422 F.3d at 567). If the claim is understood to be a due process claim, "the analysis…focuses only on events that happened in court that should have alerted the trial judge to the need for a competency hearing." *Burt*, 422 F.3d at 570. A competency hearing is required only if "there is a bona fide doubt that arises as to a defendant's competency before trial." *United States v. Stoller*, 827 F.3d 591, 596 (7th Cir. 2016).

"Relevant factors [regarding a defendant's competency] include any evidence of irrational behavior, the defendant's demeanor in court, and any medical opinions on the defendant's competency to stand trial." *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009). The Seventh Circuit has also considered evidence that a defendant: (a) has been diagnosed with a severe psychiatric illness, *see, e.g., Burt*, 422 F.3d at 564-65; *McManus v. Neal,* 779 F.3d 634, 657 (7th Cir. 2015); (b) had been receiving large dosages of psychotropic medications, *see, e.g., Burt,* 422 F.3d at 565-66; *McManus,* 779 F.3d at 657; and (c) possesses substandard intelligence, *see, e.g., Newman v. Harrington*, 726 F.3d 921, 930 (7th Cir. 2013); *Burt*, 422 F.3d at 565-66.

Mr. Reed has not shown that Mr. Martin failed to provide reasonably effective representation by not requesting a competency hearing. First, Mr. Reed has not presented any evidence reflecting that he had been diagnosed with ADHD at the time of the plea hearing. The

18

Court questioned him regarding his mental health during the plea colloquy, and he stated that he had "anger management [issues] and depression." [Filing 120 in the Criminal Case at 4.] Only anger management issues, depression, and stress are mentioned in the PSR, but not ADHD. [Filing No. 100 in the Criminal Case at 25.] And Mr. Reed did not mention ADHD at the sentencing hearing either. [*See* Filing No. 122 in the Criminal Case.] Further, Mr. Reed's sentencing memorandum – considered by the Court in connection with sentencing – discussed Mr. Reed's social services records and reflected a thorough investigation into his mental health. [Filing No. 108-1 in the Criminal Case.] The sentencing memorandum specifically noted that Mr. Reed was tested for ADHD in ninth grade, and the test indicated that while he had trouble concentrating, he did not have ADHD. [Filing No. 108-1 in the Criminal Case at 19-20.]

Second, and as already discussed in connection with his coercion argument, Mr. Reed repeatedly stated at the plea hearing that he understood the charges against him, the proceedings, and the effect of his guilty plea. There was no indication that he had ADHD which was rendering him incompetent. There is also no indication that Mr. Reed ever asked Mr. Martin to request a competency hearing, and he did not ask the Court directly for a competency hearing during the plea colloquy.

There is simply no evidence that Mr. Reed informed Mr. Martin of any difficulties in understanding the criminal proceedings or that he had any issues assisting Mr. Martin with his defense. He also has not shown that he suffered prejudice. Even if Mr. Reed could show that he may have been diagnosed with ADHD had he been tested by a professional at the outset of his case, he has not shown that an ADHD diagnosis would have led to a finding of incompetency.

Mr. Reed's argument that Mr. Martin should have asked for a competency hearing based on Mr. Reed's ADHD does not provide a basis for relief.[2]

### 4.    *Failure to Request Ballistic Testing*

Finally, Mr. Reed argues in support of his motion that he requested that Mr. Martin have a ballistic test conducted on Mr. Reed's firearms "to attack the discharge of the firearms that he allowed [Mr. Reed] to plea[d] guilty to."  [Filing No. 1 at 5.]

The Government argues in its response that Mr. Reed was charged with and pled guilty to brandishing a firearm, not discharging a firearm, so "disproving discharge would have been irrelevant."  [Filing No. 17 at 17.]  It notes that, in any event, testing confirmed that the firearm found when Mr. Reed was arrested was the same firearm used in the robbery earlier that day, that witness testimony would have proven it was discharged, and that the Court recognized as much at the sentencing hearing.  [Filing No. 17 at 17.]  It argues that Mr. Reed has not shown prejudice and "cannot show that he would have eschewed a plea to brandishing if the discharge count had been dismissed in a different manner."  [Filing No. 17 at 18.]

Mr. Reed does not address the ballistic testing issue in his reply.  [*See* Filing No. 24.]

Mr. Reed pled guilty to ten counts of Interference with Commerce by Robbery and four counts of Brandishing a Firearm in Furtherance of a Crime of Violence in exchange for the Government's dismissal of five Brandishing a Firearm in Furtherance of a Crime of Violence counts and the Discharging a Firearm During and in Relation to a Crime of Violence count.  [Filing No. 87 in the Criminal Case at 1-2.]  Because the Discharging a Firearm count was dismissed,

---

[2] Mr. Reed requests an evidentiary hearing on the issues of whether Mr. Martin interfered with his request for new counsel, whether Mr. Martin coerced him into pleading guilty, and whether Mr. Reed's mental condition affected his competency.  [Filing No. 24 at 4.]  The Court is able to reach a conclusive determination as to the merits of Mr. Reed's arguments, so it **DENIES** his request for an evidentiary hearing.  *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).

conducting ballistic testing on the firearm to see if it actually discharged was unnecessary and would have been of no consequence.  Additionally, and in any event, Mr. Reed stated at the plea hearing that he agreed with the factual basis in his Plea Agreement, which stated that during one of the September 15, 2020 robberies, he "fired 4 shots at the door before walking out of the store." [Filing No. 87 at 12; Filing No. 120 at 19.]  Mr. Reed has not shown that Mr. Martin was deficient by not requesting ballistic testing on the firearm nor that Mr. Reed suffered any prejudice, and this argument does not provide a basis for relief.

It is not uncommon for defendants like Mr. Reed, who were confronted with the stacking provisions of § 924(c) and chose to plead guilty, to second guess their decision after the fact, even when their plea resulted in the dismissal of other charges that carried additional, significant penalties.  But Mr. Reed – who admitted to committing ten robberies while brandishing a firearm – received a sentence well below the Guideline range on each robbery count due to Mr. Martin's zealous advocacy and his full use of the panoply of resources available through the Federal Community Defender, including a thorough and comprehensive mitigation analysis.  In sum, Mr. Reed has not shown that Mr. Martin's performance fell below objective standards for reasonably effective representation or that he suffered any prejudice.  Accordingly, his § 2255 motion is **DENIED**.  [Filing No. 1.]

## IV.
### CONCLUSION

For the reasons explained in this Order, Mr. Reed is not entitled to relief on his § 2255 motion.  He did not receive ineffective assistance of counsel in connection with any of the grounds that he raises.  Moreover, Mr. Reed's factual claims would not warrant relief, or they lack sufficient detail to warrant holding an evidentiary hearing to resolve them.

Accordingly, Mr. Reed's Motion for Relief Pursuant to 28 U.S.C. § 2255, [1], is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.  Judgment consistent with this Order shall now issue and the Clerk shall docket a copy of this Order in the Criminal Case (1:21-cr-00317-JMS-MJD-1).  The Motion to Vacate, [Filing No. 118 in the Criminal Case (1:21-cr-00317-JMS-MJD-1)], shall also be **TERMINATED** in the underlying criminal action.  Additionally, Mr. Reed's Motion to Compel Discovery and Production Pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [22], is **DENIED**, and his Motion to Expand the Record Pursuant to Rule 7 of the Rules Governing 28 U.S.C. § 2255 Proceedings, [23], is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

## V.
### DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition.  Rather, he must first request a certificate of appealability.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014).  Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Mr. Reed has failed to show that reasonable jurists would find it "debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  The Court therefore **DENIES** a certificate of appealability.

Date: 7/22/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

22

**<u>Distribution via ECF only to all counsel of record</u>**

**<u>Distribution via U.S. Mail to</u>:**

Adam Reed
#17746-028
FCI Butner Medium II
Federal Correctional Institution
P.O. Box 1500
Butner, NC 27509